**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

TEMURMALIK NOSIROV,

　　　　　　　　　　　*Petitioner*,

　　　v.

JOHN RIFE, Acting Field Office Director of Enforcement and Removal Operations, Philadelphia Field Office, Immigration and Customs Enforcement; JAMAL L. JAMISON, Warden of Philadelphia Federal Detention Center,

　　　　　　　　　　　*Respondents*.

**PETITION FOR WRIT OF HABEAS CORPUS**

**Case No.** 2:26-cv-1534

### MEMORANDUM

**Perez, J.**　　　　　　　　　　　　　　　　　　　**April 1, 2026**

Petitioner seeks habeas relief from his present immigration detention. Respondents contend that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c), as amended by the Laken Riley Act, based on a pending criminal action in New Jersey. They argue in the alternative that he may be detained under 8 U.S.C. § 1225. The Court concludes otherwise. The Government's fallback reliance on § 1225 is foreclosed for the reasons this Court and others have already explained, and its broad reading of that provision would leave Congress's recent amendment to § 1226(c) with little independent work to do. Nor have Respondents shown, on this record, that Petitioner clearly falls within the mandatory detention provision added by the Laken Riley Act. The Government's presentation of both Petitioner's parole history and the underlying New Jersey proceedings is too imprecise to justify detention without bond under a statute that turns on specific predicates. Even assuming the statute could be read to apply, mandatory detention here would violate due process because Petitioner is being held without

1

bond based only on an unresolved criminal accusation, without any conviction and without any individualized determination of dangerousness or flight risk. The Court will therefore grant the petition to the extent petitioner seeks a prompt bond hearing.

## I.    Background of Case

Petitioner is a native and citizen of Uzbekistan. ECF No. 1 ¶ 2. He entered the United States on or about December 12, 2021. *Id*. ¶ 28. After his entry, he was detained by U.S. Customs and Border Protection ("CBP") and placed into immigration processing. *Id*. ¶¶ 28–29. Following a credible-fear interview, an asylum officer found that Petitioner had established a credible fear of persecution if returned to Uzbekistan. *Id*. ¶ 29. On January 27, 2022, the Government granted Petitioner humanitarian parole under 8 U.S.C. § 1182(d)(5). *Id*. ¶¶ 3, 30. After Petitioner was paroled into the United States, removal proceedings continued. The Department of Homeland Security ("DHS") issued him a Notice to Appear, and he pursued asylum and related relief before the immigration court. *Id*. ¶¶ 4–5, 30–31. During that period, Petitioner obtained employment authorization, lived in the community, and complied with Immigration and Customs Enforcement ("ICE") reporting requirements by checking in as directed. *Id*. ¶¶ 4–5, 31. He also appeared for his scheduled immigration court proceedings. *Id*. ¶ 31. When the events underlying this petition occurred, Petitioner's asylum case was still pending, and his final merits hearing was scheduled for July 22, 2026. *Id*. ¶ 5, 31.

The record includes a parole notice dated January 27, 2022, stating that Petitioner's parole was valid for one year and would automatically terminate at the end of that period unless ICE granted an extension. ECF No. 1-3. The record does not contain an extension, a renewed grant of parole, or a separate notice terminating parole.

The present detention dispute arises against the backdrop of a state court matter in New

Jersey. According to Petitioner, in December 2025 he purchased a 53-foot trailer through Facebook Marketplace for use in his trucking business and registered the trailer in his own name. ECF No. 1 ¶ 32; ECF No. 8 at 4. Petitioner states that, in or around February 2026, either he or someone working for him was pulled over while using the trailer, and only then did he learn that the trailer had been reported stolen. ECF No. 1 ¶ 32. He further asserts that he turned the trailer over to law enforcement and possesses messages and other records showing that he did not know the trailer was stolen when he acquired it. ECF No. 8 at 4.

The record further reflects that a New Jersey Complaint-Summons was issued on February 28, 2026. ECF No. 9 at 5. The summons was issued out of Logan Township Municipal Court and directs Petitioner to appear in Gloucester County Superior Court on April 2, 2026, at 8:30 a.m. *Id.* The document lists two charges: receiving stolen property, in violation of N.J.S.A. 2C:20-7a, and fencing or dealing in stolen property, in violation of N.J.S.A. 2C:20-7.1B(1). *Id.*

Respondents describe the underlying state event differently. In their opposition, they assert that on "February 9, 2026, Logan Township, New Jersey Police arrested Petitioner for Receiving Stolen Property in violation of N.J.S.A § 2C:20-7a." ECF No. 5 at 4. Respondents further contend that this event triggers mandatory detention under the Laken Riley Act. ECF No. 5 at 3, 6–7. Respondent's position is also that Petitioner's parole has terminated and he is therefore detainable either under § 1226(c)(1)(E) or, alternatively, under § 1225. *Id.* at 3, 8–11.

ICE took Petitioner into custody on March 9, 2026. ECF No. 1 ¶ 6; ECF No. 5 at 3. Petitioner alleges that this re-detention effectively revoked his parole without the individualized determination required by law and deprived him of any opportunity for a bond hearing. ECF No. 1 ¶¶ 6–9, 23–25, 36–38. He filed this habeas petition challenging both the legal basis for detention and the Government's treatment of his parole status. *Id.*

3

## II.    Legal Discussion

The detention question presented here turns on which statutory framework governs. 8 U.S.C. § 1225 governs the inspection and detention of applicants for admission. 8 U.S.C. § 1226 governs the arrest and detention of noncitizens pending a decision on removal and, in turn, establishes two distinct detention regimes. Under § 1226(a), detention is generally discretionary, and release on bond or conditional parole may be available. Under § 1226(c), by contrast, detention is mandatory for certain specified categories of noncitizens, and ordinary bond authority is unavailable. *See* 8 U.S.C. §§ 1225, 1226(a), (c). The dispute here is, therefore, not simply whether Petitioner may be detained during removal proceedings, but whether he falls within a statutory category that forecloses a bond hearing altogether.

Respondents contend that Petitioner may be detained under either statute. Respondents principally rely on § 1226(c), as amended by the Laken Riley Act, but invoke § 1225 in the alternative. The Court rejects that fallback § 1225 theory for reasons it has already explained in materially similar cases.[1] Petitioner was previously paroled into the United States and later re-

---

[1] It should come as no surprise to the government that § 1225(b)(2)(A) does not apply here. That provision reaches a noncitizen who is an "applicant for admission," is presently "seeking admission," and is "not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A); *see Kashranov v. Jamison*, No. 2:25-cv-05555, 2025 WL 3188399, at *6 (E.D. Pa. Nov. 14, 2025). "Seeking admission" describes ongoing conduct—physically attempting to enter the United States, typically at a border or port of entry—not continued residence in the interior of the country years later. *Id.* Petitioner here was granted parole into the United States on January 27, 2022, and thereafter lived in the United States for years while pursuing asylum and related relief in removal proceedings, obtaining work authorization, checking in with ICE, and appearing in immigration court. ECF No. 1 ¶¶ 3–5, 30–31; ECF No. 1-3. When ICE detained him in March 2026, he was not at the border, had not just arrived, and was not then "seeking admission"; he was living in the interior of the United States and awaiting further proceedings in his immigration case. On these facts, § 1225(b)(2)(A) does not apply. *See, e.g.*, *Ramirez v. Bondi*, No. 26-0522, 2026 WL 321442 (E.D. Pa. Feb. 6, 2026); *Vasquez-Rosario v. Noem*, No. 25-cv-7427, 2026 WL 196505 (E.D. Pa. Jan. 26, 2026); *Restrepo v. Jamison*, No. 2:25-cv-6518, 2026 WL 141803 (E.D. Pa. Jan. 20, 2026); *Chavez v. McShane*, No. 25-6968, 2026 WL 120671 (E.D. Pa. Jan. 16, 2026); *Muzofirov v. Jamison*, No. 25-7371, 2026 WL 126153 (E.D. Pa. Jan. 16, 2026); *Kanaut v. Rose*, No. 24-6869, 2026 WL 36690 (E.D. Pa. Jan. 6, 2026); *Rios Porras v. O'Neill*, No. 25-6801, 2025 WL 3708900 (E.D. Pa. Dec. 22, 2025); *Hurtado v. Jamison*, No. 25-6717, 2025 WL 3678432 (E.D. Pa. Dec. 18, 2025); *Anirudh v. McShane*, No. 25-6458, 2025 WL 3527528 (E.D. Pa. Dec. 9, 2025); *Bhatia v. O'Neill*, No. 25-6809, 2025 WL 3530075 (E.D. Pa. Dec. 9, 2025); *Rodriguez Pereira v. O'Neill*, No. 25-6543, 2025 WL 3516665 (E.D. Pa. Dec. 8, 2025); *Juarez v. O'Neill*, No. 25-6191, 2025 WL 3473363 (E.D. Pa. Dec. 3, 2025); *Nogueira-Mendes v. McShane*, No. 25-5810, 2025 WL 3473364 (E.D. Pa. Dec. 3, 2025); *Flores Obando v. Bondi*, No. 25-6474, 2025 WL 3452047 (E.D. Pa. Dec. 1, 2025); *Diallo v. O'Neill*, No. 25-6358, 2025 WL 3298003 (E.D. Pa. Nov. 26, 2025); *Morocho v.*

detained from the interior; Respondents cannot treat him as though he were once again being held while "seeking admission" under § 1225.

More fundamentally, the structure of the detention statutes forecloses Respondents' reading. Congress has long used § 1226(c) to identify specific categories of noncitizens subject to mandatory detention during removal proceedings. That design would make little sense if § 1225 already swept as broadly as Respondents argue. *See, e.g.*, 8 U.S.C. §§ 1226(c)(1)(B), 1227(a)(2)(A)(iii). In 2025, Congress amended § 1226(c) through the Laken Riley Act to add a new mandatory-detention category covering certain noncitizens who are inadmissible and who have been charged with, arrested for, convicted of, or admitted to specified offenses. *See* Laken Riley Act, Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2025); 8 U.S.C. § 1226(c)(1)(E). The Government's broad reading of § 1225 would leave that amendment with little independent work to do. If all noncitizens who entered without admission or parole were already categorically subject to mandatory detention under § 1225, there would have been little reason for Congress to create a new and more specific mandatory-detention category in § 1226(c). Congress did not amend § 1226 to say nothing. The amendment makes sense only if § 1225 did not already accomplish the result Respondents now seek.

### A. Petitioner's parole status does not establish the inadmissibility predicate required by § 1226(c)(1)(E).

Before Respondents can jump ahead to the Laken Riley Act's criminal-predicate language, they must first establish the incorporated inadmissibility element. Section 1226(c)(1)(E)(i) applies only if Petitioner "is inadmissible under" one of the listed provisions.

---

*Jamison*, No. 25-cv-05930, 2025 WL 3296300 (E.D. Pa. Nov. 26, 2025); *Espinal Rosa v. O'Neill*, No. 25-cv-6376 (E.D. Pa. Nov. 25, 2025); *Ndiaye v. Jamison*, No. 25-6007, 2025 WL 3229307 (E.D. Pa. Nov. 19, 2025); *Demirel v. Fed. Det. Ctr. Phila.*, No. 25-5488, 2025 WL 3218243 (E.D. Pa. Nov. 18, 2025). For the same reasons, Petitioner's detention is properly analyzed under § 1226, not § 1225.

The provision Respondents appear to invoke—§ 1182(a)(6)(A)—covers a person present in the United States "without being admitted or paroled." That requirement is a substantive part of the statute the government has largely glossed over. DHS in fact paroled Petitioner into the country on January 27, 2022. ECF No. 1-3. The statute does not clearly provide that a previously paroled noncitizen later becomes a person present "without being admitted or paroled" simply because parole *expired*. If Congress meant to reach that circumstance, it did not say so expressly. Respondents bear the burden of explaining why Petitioner nevertheless falls within the precise inadmissibility ground they invoke. They have failed to do so.

The governing statute and regulations identify two ways parole may end. Under 8 U.S.C. § 1182(d)(5)(A), DHS may parole a noncitizen into the United States temporarily. The implementing regulations distinguish between automatic expiration and termination on notice. Under 8 C.F.R. § 212.5(e)(1), parole terminates automatically in certain circumstances, including "at the expiration of the time for which parole was authorized"; no written notice is required to terminate parole in that circumstance. 8 C.F.R. § 212.5(e)(1)(ii). By contrast, under 8 C.F.R. § 212.5(e)(2), parole terminates "upon written notice to the alien" when DHS determines that the purpose of parole has been accomplished or that neither humanitarian reasons nor public benefit warrants continued presence. Thus, the regulations draw a clear distinction: automatic expiration does not require separate written notice; discretionary termination does.

Recent decisions in this District have recognized that distinction and, more broadly, have treated parole as a legal status with legal consequences that the Government cannot ignore when it later seeks to justify detention. *See, e.g., Talabadze v. Rose*, No. 26-cv-360 (E.D. Pa. Jan. 30, 2026) (Perez, J.); *Seminario-Marcos v. Jamison*, No. 26-cv-421 (E.D. Pa. Feb. 6, 2026) (Kearney, J.); *Vazquez-Diaz v. Rose*, No. 26-cv-342 (E.D. Pa. Feb. 10, 2026) (Gallagher, J.); *Vargas-*

*Quajada v. Jamison*, No. 26-cv-914 (E.D. Pa. Feb. 17, 2026) (McHugh, J.); *Nawab Ali v. Jamison*, No. 26-cv-729 (E.D. Pa. Feb. 19, 2026) (Quiñones Alejandro, J.); *Zavala Ulloa v. Jamison*, No. 26-cv-823 (E.D. Pa. Feb. 20, 2026) (Marston, J.); *Green v. Jamison*, No. 26-0773 (E.D. Pa. Feb. 26, 2026) (Scott, J.). Those cases do not control here, given the parole notice's apparent provision for automatic expiration after one year unless extended. However, they confirm a principle equally applicable in this case: parole is a legal status with legal consequences, and the Government may not erase or ignore that status when it becomes inconvenient to its detention theory.

That said, the Court does not accept Petitioner's narrower argument that DHS necessarily had to provide separate written notice before his original grant of parole could be treated as ended. The present record points toward automatic expiration, not discretionary termination. *See* ECF No. 1-3 (stating Petitioner's parole was valid for one year and would automatically terminate at the end of that period unless ICE granted an extension). The record contains no extension, no renewed grant of parole, and no separate termination notice. On this record, the most natural inference is that Petitioner's original parole expired by its own terms before ICE detained him in March 2026. The Court, therefore, is not persuaded that DHS was required to provide separate written notice before the original parole grant ended. That conclusion, however, gets Respondents only so far. It means only that Petitioner's parole may have ended automatically; it does not answer the separate question that matters here—whether a previously paroled noncitizen thereby becomes a person present "without being admitted or paroled" within the meaning of the incorporated inadmissibility ground.

What this record does show, however, is a striking lack of coherence in the Government's treatment of Petitioner's parole status. DHS granted parole, documented that grant, and then

issued a Notice to Appear the same day alleging that Petitioner was an alien present in the United States "who has not been admitted or paroled." ECF No. 1-2 at 1; ECF No. 1-3. That contradiction is not a minor clerical inconsistency. It goes directly to the status question Respondents now ask the Court to treat as settled. And in this litigation, Respondents continue to shift ground: they invoke a statute that applies to a person present "without being admitted or paroled," while simultaneously relying on the legal effect of the parole grant and its supposed later expiration when doing so helps defeat Petitioner's notice argument. Parole is not a status the Government may treat as legally operative when convenient and legally irrelevant when inconvenient. Where Respondents seek the severe consequence of mandatory detention without bond, the Court will not overlook a record that is this internally inconsistent and carelessly assembled.

The Court's conclusion is straightforward. Petitioner was granted parole. Even assuming that his parole later expired automatically, that does not transform him into a person who was in the United States "without being admitted or paroled." That conclusion is reinforced by the Government's own treatment of parole. The agency record here is internally inconsistent, and the recent detention cases in this District reflect that the Government has not treated parole in a uniform way—at times insisting on its legal significance, at others minimizing or disregarding it when doing so better serves its detention theory. Section 1226(c)(1)(E)(i) depends on a threshold showing that Petitioner was "inadmissible," here because he is a person present in the United States "without being admitted or paroled," but Respondents have not shown why prior parole no longer matters under the statutory text. They have failed to establish the inadmissibility predicate to application of § 1226(c)(1)(E).

**B. Even assuming Petitioner falls within the inadmissibility clause of § 1226(c)(1)(E)(i), Respondents have not carried their burden to establish the remaining predicate for mandatory detention under § 1226(c)(1)(E)(ii).**

The Laken Riley Act amended 8 U.S.C. § 1226(c) by creating a new category of

mandatory detention. As relevant here, the statute directs that the Attorney General "shall take into custody" a noncitizen who is inadmissible under certain provisions of 8 U.S.C. § 1182(a) and who "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of" certain listed offenses, including burglary, theft, larceny, and shoplifting. The amendment is significant because it permits mandatory detention to turn not only on a conviction, but also, in some circumstances, on an arrest or charge alone. That feature of the statute makes precision especially important. Where the Government seeks to invoke a mandatory-detention provision that forecloses ordinary bond authority, it must establish the statutory predicate with clarity.

Respondents have not done so here. Their opposition states that Petitioner "was arrested by Logan Township Police on February 9, 2026, for receiving stolen property" under N.J. Stat. § 2C:20-7(a). ECF No. 5 at 3, 6–7. However, the actual state court charging instrument now before the Court is a complaint-summons dated February 28, 2026, issued out of Logan Township Municipal Court, directing Petitioner to appear on April 2, 2026. ECF No. 9 at 5. That document lists two charges—N.J.S.A. § 2C:20-7A and N.J.S.A. § 2C:20-7.1B(1)—and it is not an arrest warrant, booking record, or other custodial arrest document. *Id.* That discrepancy is not minor. Respondents chose to justify mandatory detention by asserting an *arrest on a specific date for a specific offense.* The record they submitted does not establish that account. Respondents produced no arrest report, no booking record, no state docket, and no comparable materials substantiating the arrest they allege. The Court will not accept the Government's characterization of the state proceedings in place of the underlying record where the only document before the Court contradicts the Government's position and the result is detention without bond.

Petitioner's account of the events underlying the New Jersey charge underscores the

Court's concern. He contends that the charge is wrongful and that he did not *knowingly* possess stolen property. He represents that he purchased the trailer openly through Facebook Marketplace for his trucking business, registered it in his own name, surrendered it to law enforcement once its status was brought to his attention, and that he possesses messages and other records supporting that account. ECF No. 1 ¶ 32; ECF No. 8 at 4. The Court does not resolve that factual dispute, and nothing in this opinion turns on Petitioner's ultimate guilt or innocence. However, the existence of a concrete dispute over knowledge and culpability underscores the danger of using a mere accusation to trigger mandatory detention without bond. That danger is magnified here by the Government's own imprecision. Respondents seek the extraordinary consequence of mandatory detention, yet their submissions present the state proceedings in shifting terms and leave the Court to sort out discrepancies that it was the Government's burden to clarify.

Nonetheless, the complaint-summons is likely sufficient to show that Petitioner was charged within the meaning of the Laken Riley Act.[2] That conclusion, however, only sharpens the real issue. Respondents seek mandatory detention without bond, or even a bond hearing, based solely on an unresolved accusation. That fact, not any formal dispute over the status of the charging instrument, drives the constitutional analysis. The Court therefore turns to whether due process permits detention on those terms.

### C. Even if § 1226(c)(1)(E) applies, its application here would violate Petitioner's right to due process.

The Court next addresses Petitioner's constitutional argument.[3] Even assuming

---

[2] The Court does not dismiss Respondents' position that receiving stolen property under N.J.S.A. § 2C:20-7(a) may qualify as a theft offense under the Laken Riley Act. The Act provides that the terms "burglary," "theft," "larceny," and "shoplifting" take the meanings given by the jurisdiction in which the acts occurred, and New Jersey's receiving-stolen-property statute states that a person who knowingly receives stolen movable property "is guilty of theft." 8 U.S.C. § 1226(c)(2); N.J.S.A. § 2C:20-7(a). On that basis, Respondents may ultimately be correct that § 2C:20-7(a) falls within the Act's reference to a theft offense.

[3] Petitioner appears to press a broader constitutional challenge to the Laken Riley Act itself. See ECF No. 8 at 1, 5–

Respondents had established the statutory predicates for detention under 8 U.S.C. § 1226(c)(1)(E), that would not end the analysis. The Fifth Amendment applies to "all persons" within the United States, including noncitizens in immigration custody, and civil detention remains subject to due process limits. The question, then, is whether Congress may constitutionally require mandatory detention without bond where the asserted trigger is only an unresolved state accusation and where no individualized determination of dangerousness or flight risk has been made. On this record, the answer is no.

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Fifth Amendment's Due Process Clause forbids the Government to deprive any "person" of liberty without due process of law. U.S. Const. amend. V. And "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" protected by that Clause. *Zadvydas v. Davis,* 533 U.S. 678, 690 (2001). The Supreme Court has therefore "repeatedly recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas,* 441 U.S. 418, 425 (1979). That principle has been applied across detention settings. In *Salerno*, the Court upheld pretrial detention under the Bail Reform Act only because Congress had narrowly targeted a specific danger, required a prompt adversarial hearing, and imposed demanding

---

13. The Court need not reach that question. This case can be resolved on narrower grounds because, as applied here, Respondents seek mandatory detention without bond based solely on an unresolved state charge, without any conviction and without any individualized determination of dangerousness or flight risk. *See Ashwander v. TVA*, 297 U.S. 288, 346–47 (1936) (Brandeis, J., concurring). That said, the Court's as-applied holding should not be mistaken for an endorsement of the statute's broader design. The Fifth Amendment protects all persons within the United States, regardless of immigration status. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Section 1226(c)(1)(E)(ii) raises serious constitutional doubt insofar as it makes mandatory detention turn on the mere fact that a person "is charged with" or "is arrested for" a listed offense. In those applications, liberty is withdrawn at the accusation stage, automatically, and without any individualized determination that detention is necessary. The Court does not decide whether those provisions are invalid in every case, because it need not do so here.

procedural safeguards, including proof by clear and convincing evidence. 481 U.S. at 742, 750–52. In *Foucha v. Louisiana*, the Court rejected continued confinement where the State could no longer justify detention on the basis that originally supported it. 504 U.S. 71, 77–83 (1992). And in *Kansas v. Hendricks,* the Court sustained civil commitment only because detention turned on a separate finding, through proper procedures, of mental abnormality and dangerousness. 521 U.S. 346, 357–60 (1997). The common thread is straightforward: civil detention may be permissible, but only when it is tied to a sufficient justification and accompanied by constitutionally adequate process.

Those protections apply no less in immigration detention. In *Zadvydas*, the Court made clear that the Due Process Clause applies to "all persons" within the United States, including noncitizens, and it relied directly on cases such as *Foucha* and *Salerno* in holding that civil immigration detention may not continue once it loses a reasonable relation to its purpose. 533 U.S. at 690–93. Immigration detention is civil, not punitive, but precisely because it is civil, its constitutionality depends on the fit between the Government's justification for detention and the procedures used to impose it. *See id*. at 690.

Respondents' opposition proceeds from a different premise. They argue that because Petitioner is treated as an applicant for admission, he has no procedural rights beyond those Congress chose to provide. Their authorities do not carry that much weight. *Knauff, Mezei, Landon,* and *Thuraissigiam* concern the Government's power to admit or exclude noncitizens at the threshold of entry and the limited procedural rights available with respect to the admission determination itself. *See United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542–44 (1950); *Shaughnessy v. United States ex rel. Mezei,* 345 U.S. 206, 212 (1953); *Landon v. Plasencia*, 459 U.S. 21, 32 (1982); *Dep't of Homeland Sec. v. Thuraissigiam,* 591 U.S. 103, 139–

40 (2020). Those cases stand for the proposition that an arriving noncitizen has limited constitutional rights with respect to admission. They do not hold that once Congress labels a person an applicant for admission, detention is insulated from ordinary due process scrutiny.

Petitioner does not challenge the procedures governing his asylum claim or removability. He challenges the Government's insistence that it may hold him without bond solely because he has been accused in state court of a listed offense. *Knauff*, *Mezei*, and *Thuraissigiam* arise under entirely different circumstances and address entirely different issues. *Thuraissigiam*, in particular, concerned the scope of habeas review over expedited-removal determinations, but it did not hold that mandatory detention based on accusation alone, without a bond hearing, comports with due process. See 591 U.S. at 107–09, 139–40.

Nor does *Demore v. Kim,* 538 U.S. 510 (2003), control this case. *Demore* upheld mandatory detention under the prior version of § 1226(c) in the context of a noncitizen who had already been convicted of offenses that Congress identified as serious enough to justify detention during removal proceedings. *Id.* at 513, 517–21. The premise of that decision was that detention attached to a class of noncitizens whose criminal culpability had already been established through ordinary criminal process, and the Court understood the detention to be relatively brief. *Id.* at 518–21, 529–30. This case falls outside that rationale. Here, Respondents do not rely on a conviction. Petitioner has not been adjudged guilty of the offense on which Respondents rely, no immigration judge has found him dangerous or likely to flee, and the Government seeks detention without bond solely because an accusation has been filed. That is a materially different application of the detention power from the one approved in *Demore.*

The difference is substantive, not semantic. A conviction follows adversarial proceedings and an adjudication of guilt; a charge does not. A person who has merely been charged remains

13

entitled to contest every element of the offense, including knowledge and intent. Here, Petitioner maintains that he did not *knowingly* possess stolen property, that he purchased the trailer openly through Facebook Marketplace, registered it in his own name, surrendered it to law enforcement, and has records supporting that account. ECF No. 1 ¶ 32; ECF No. 8 at 4. Although the Court does not determine Petitioner's guilt or innocence on the underlying offense, the existence of such a dispute confirms what the record here shows: the state proceedings have not established criminal culpability. Extending *Demore* from convictions to unresolved accusations would expand the constitutional logic of mandatory detention beyond the setting the Supreme Court actually addressed.

Respondents also rely on *Jennings* and *German Santos,* but neither case controls the issue presented here. *Jennings* is relevant only because it makes clear that a court may not rewrite the detention statutes by interpretation to require bond hearings that the statutory text does not provide, but *Jennings* expressly left the constitutional questions open. *Jennings v. Rodriguez*, 583 U.S. 281, 305–14 (2018). Although *Jennings* forecloses a statutory workaround, it does not answer whether detention without bond is constitutional in this application. *German Santos*, meanwhile, is relevant because it confirms that detention under § 1226(c) remains subject to due process limits. *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 210–14 (3d Cir. 2020). Unlike *German Santos*, the problem here is not primarily duration; it is that Respondents seek mandatory detention from the outset based only on a charge or arrest, not a conviction, and without any individualized determination that detention is necessary. A conviction establishes guilt. A charge or arrest does not.

Since Petitioner's challenge is procedural as well as substantive—that is, he challenges the Government's ability to impose mandatory detention without any individualized custody

determination—the Court evaluates the adequacy of the process provided under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). The Third Circuit's detention cases repeatedly emphasize that civil immigration detention must remain tied to its justification and accompanied by constitutionally sufficient process. See *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 231–35 (3d Cir. 2011), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018); *Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469, 474–78 (3d Cir. 2015); *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 210–14 (3d Cir. 2020); *Gayle v. Warden Monmouth Cnty. Corr. Inst.*, 12 F.4th 321, 329–31 (3d Cir. 2021). Other courts have likewise applied *Mathews* to detention without a bond hearing. See, e.g., *Hernandez-Lara v. Lyons*, 10 F.4th 19, 27–28 (1st Cir. 2021); *Black v. Decker*, 103 F.4th 133, 147–48 (2d Cir. 2024).

Under *Mathews*, the Court considers the private liberty interest at stake, the risk of erroneous deprivation under the procedures used and the value of additional safeguards, and the Government's interest. 424 U.S. at 335. All three factors favor Petitioner. Petitioner's liberty interest is obvious: he is subject to physical detention, and freedom from bodily restraint lies at the core of the liberty protected by the Due Process Clause. *See Zadvydas*, 533 U.S. at 690; *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). The risk of error is substantial because the asserted trigger is not a conviction but an unresolved and disputed accusation. ECF No. 1 ¶ 32; ECF No. 8 at 4. That risk is heightened by the Government's own imprecise presentation of the predicate state proceedings. ECF No. 5 at 3, 6–7; ECF No. 9 at 5. The value of additional process is equally clear: a prompt bond hearing would permit a neutral decisionmaker to determine whether continued detention is actually necessary to address danger or flight risk. The Government's interests in ensuring Petitioner's appearance at court hearings and protecting the community are legitimate, but Respondents do not explain why those interests require dispensing with a bond

15

hearing altogether. The *Mathews* balance therefore confirms that, as applied here, due process does not permit Petitioner to be held without bond under § 1226(c)(1)(E) absent an individualized custody determination.

The Court rejects Respondents' contention that detention without bond is constitutional here merely because Petitioner is treated as an applicant for admission or because his detention has not yet become prolonged. Those propositions do not answer the question this case presents: whether the Government may impose mandatory detention without a bond hearing based solely on an unresolved criminal accusation. As applied here, it may not. The Court need not decide whether the Laken Riley Act is unconstitutional in every application. It is enough that, on this record, the Government seeks mandatory no-bond detention based solely on a pending state charge, without any conviction or individualized finding of dangerousness or flight risk. That narrower course accords with settled judicial practice. See *Ashwander v. TVA*, 297 U.S. 288, 346–47 (1936) (Brandeis, J., concurring), and with the Third Circuit's detention cases. See *Diop*, 656 F.3d at 232–35; *Chavez-Alvarez*, 783 F.3d at 474–78; *German Santos*, 965 F.3d at 210–14.

For those reasons, the Court concludes that, even assuming Petitioner falls within the literal terms of § 1226(c)(1)(E), the statute is unconstitutional as applied here.

## III.    CONCLUSION

For the reasons set forth above, the Court will grant the Petition. On the present record, Respondents have not carried their burden to establish that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(E). Even if that provision reached Petitioner's circumstances, its application here would violate due process because Petitioner is being subjected to mandatory detention without bond on the basis of an unresolved criminal accusation alone and without any individualized determination that continued detention is necessary.

16

Because Petitioner's present detention under the Government's current no-bond theory is unlawful, the appropriate remedy is immediate release. Nothing in the accompanying Order prevents Respondents from seeking future detention through a lawful custody determination consistent with this Opinion.